IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GIOVONNI SHELTON,<br>   *Plaintiff,*<br><br>v.<br><br>PARKLAND HEALTH<br>   *Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. NO. 3:24-cv-02190-L<br><br><br>JURY TRIAL DEMANDED |

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Giovanni Shelton ("Plaintiff" or "Shelton") and filed this First Amended Complaint under Fed. R. Civ. P. 15(a)(1)(B) to bring the following causes of action listed herein against Defendant Parkland Health ("Defendant" or "Parkland") and would respectfully show the court the following:

## I.    NATURE OF THE CASE

1.    This employment discrimination case is brought by Giovanni Shelton, a former employee of Parkland. Plaintiff brings claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII") and the Texas Commission on Human Rights Act ("TCHRA"), based upon pregnancy, and failure to accommodate under the Pregnancy Discrimination Act of 1978 ("PDA") and the Americans with Disabilities Act of 1990 ("ADA"),

discrimination and retaliation due to her gender (Female) against Parkland, discrimination due to her pregnancy-related disability.

## II.     PARTIES & SERVICE

2.      Plaintiff Giovanni Shelton is an individual residing in Dallas County, Texas.

3.      Defendant Parkland Health is a domestic for-profit corporation that may be served with process by serving its registered agent, Steven J. Roth, located at 5200 harry Hines Blvd. Dallas, Texas 75235, or alternatively, Michael A. Home, located at 1341 West Mockingbird Lane Suite 1100E, Dallas, Texas 75247.

4.      Whenever in this Complaint it is alleged that Parkland did or failed to do any act or thing, it is meant that Parkland personally engaged in such conduct, or that Parkland's governing body, directors, vice principals, officers, managers, agents, servants, employees and/or representatives did or failed to do such act or thing and that at the time such conduct occurred, it occurred with the authorization and/or ratification of Parkland and/or was done in the normal and routine course and scope of employment or agency of Parkland's governing body, directors, vice principals, officers, managers, agents, servants, employees and/or representatives.

## III.     JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this case because it arises under the laws of the United States and is brought to recover damages for deprivation of equal rights. 28 U.S.C. § 1331.

6.      The court has supplemental jurisdiction of this case because the claims against Parkland arise under Texas law but are properly joined in this suit because they

share a common nucleus of operative fact with the federal claims. 28 U.S.C. § 1367(a); FED. R. CIV. PRO. § 20(a)(2).

7.     Within 300 days of the last discriminatory act complained of Plaintiff filed her initial complaint with the Equal Employment Opportunity Commission ("EEOC") via Charge of Discrimination No. 450-2024-02629.

8.     Therefore, Plaintiff has exhausted any applicable administrative remedies and on or about June 05, 2024, received the Dismissal and Notice of Right to Sue letter from EEOC. This lawsuit has been filed within 90 days of her receipt of the Dismissal and Notice of Right to Sue letter.

9.     Thus, all conditions precedent to filing this lawsuit and as required by law have been performed or have occurred.

10.     Venue is proper in this judicial district court 28 U.S.C. §1391(b), (c) and 42 U.S.C. §2000e- 5(f)(3), because Parkland conducts business in the district, and a substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in the Northern District of Texas, Dallas Division.

## IV.    FACTS

11.     In approximately March of 2023, Plaintiff began working for Parkland as a Senior Payroll Analyst.

12.     When Plaintiff became pregnant, she informed her supervisor, Christi Espino ("Espino"), and her coworkers about her pregnancy during a virtual Webex meeting.

13.    In about October 2023, Plaintiff attended a scheduled prenatal appointment at Parkland, where she was diagnosed with a hypertension disorder due to her pregnancy, further complicated by fetal growth restrictions.

14.    The Plaintiff's doctor recommended Plaintiff work from home for the next three to four weeks from the date of the appointment to increase her ability to rest and help decrease her blood pressure, which would ultimately be the best for Plaintiff and her baby.

15.    As a result, Plaintiff subsequently and promptly submitted a work-from-home accommodation request to Defendant's third-party administrator, Sedgwick, as required by Parkland's company policies.

16.    On the same day that Plaintiff requested an accommodation, Plaintiff's supervisor, Espino, denied Plaintiff's work-from-home accommodation request, stating that her job was not a "virtual role." Moreover, Espino further insisted that the Plaintiff's job had no "limiting or strenuous aspects," and that her request for accommodation would not be approved "without just cause." Notably, Espino failed to provide other accommodation options that may comply with Plaintiff's doctor's recommendation(s). In other words, Espino cut off any further engagement in the interactive process with regards to Plaintiff's request for accommodation and failed to accommodate her at all.

17.    Though Sedgwick granted Plaintiff's accommodation, this grant was overruled by Espino's denial of the accommodation because Espino was Plaintiff's direct supervisor and an employee of Parkland.

18.     Importantly, although Espino denied Plaintiff's request to work from home, she had allowed other employees to do so for reasons such as the general excuse of "family issues."

19.     Due to Espino's apparent bias against Plaintiff due to her pregnancy and Plaintiff's being treated less favorably than her non-pregnant coworkers, Plaintiff reported a hostile work environment due to Espino's behavior and attitude towards her that began to only after Plaintiff reported to Espino that she was pregnant.

20.     As a result of the denial of her accommodations, the Plaintiff had to use her Paid Time Off (PTO) for three days to attend the subsequent prenatal check-up appointments and to wait for Parkland to notify her as to whether she would be accommodated per her doctor's orders, which they did not.

21.     Furthermore, Espino made changes to Plaintiff's workload. Specifically, Espino began assigning Plaintiff more challenging units, pairing her with individuals known to be difficult to work with, and significantly increasing her workload.

22.     At Plaintiff's 90-day performance review, Espino informed Plaintiff that she was not meeting expectations and issued her a write-up. Plaintiff expressed her concerns about these actions to the Vice President, but no corrective action was taken.

23.     In October 2023, Plaintiff went on leave. Unfortunately, the stress of the supervisor's denial of accommodations, refusal to grant time off other than using PTO, and the hostile work environment ultimately led to the Plaintiff to have a still born child.

24.     While Plaintiff was on leave, Parkland began an investigation into her complaints. However, no action resulted from this investigation.

25.    Instead, Plaintiff experienced retaliation at Parkland. Specifically, in an unprecedented act, Dr. Ling and Dr. Stephens required Plaintiff to complete a mental health evaluation with Parkland's doctor(s), or else she will not be able to return to work, even though it was Espino's refusal to accommodate Plaintiff that resulted in Plaintiff losing her child – the most devastating event in a parent's life.

26.    Plaintiff has never seen a male employee who experienced the death of a child or any other tragedy be required to undergo a mental health evaluation in order to work at Parkland. Therefore, this was a retaliatory act designed to invade Plaintiff's private time to grief, harass, embarrass, and otherwise torment Plaintiff. It was also a pretextual reason because if Plaintiff refused to undergo the mental health evaluation, Parkland could use that as grounds to terminate her.

27.    While on leave, Plaintiff sent a letter detailing her concerns to Human Resources while on leave.

28.    Following the evaluation, the doctor diagnosed Plaintiff with post-traumatic stress disorder (PTSD), attributing the condition to her work environment under Espino based on discussions with Plaintiff. As a result, her return-to-work documentation included a restriction stating that she could not work under Espino's supervision.

29.    Upon her return in about January 2024, Parkland informed Plaintiff that she would need to secure a different position within the organization, but they refused to reassign her. Instead, they directed her to apply for any open positions.

30.     Plaintiff complied, submitting applications, but Parkland failed to place her in a new role. After 30 days, Plaintiff was removed from the system without any prior notification. In March, Parkland finally sent Plaintiff a letter confirming her termination.

31.     At the time of her termination, Plaintiff had already filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), which was pending.

32.     As a result, Shelton had retained the undersigned counsel to represent her in connection with her claims against Defendant.

## V.     DISCRMINATION UNDER FEDERAL AND STATE LAW

### I.     GENDER (PREGNANCY) DISCRIMINATION CLAIMS UNDER TITLE VII AGAINST DEFENDANT

33.     Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein.

34.     As a female (though formerly pregnant to due to the devastating loss of her baby), Plaintiff is a member of a protected class under Title VII. Plaintiff asserts the following gender discrimination claims under Title VII of the Civil Rights Act of 1964:

#### A. COUNT 1: DISPARATE TREATMENT

35.     As a pregnant female, Plaintiff was treated less favorably compared to male colleagues and/or non-pregnant female employees.

36.     Defendant had direct knowledge of Plaintiff's protected class as Plaintiff informed her supervisor, Espino, of her pregnancy and Espino was previously aware of her gender (female).

37.    Specifically, other comparators under Espino were allowed to work from home for less serious reasons than Plaintiff's pregnancy-related health issues, while Plaintiff was not. Additionally, Defendant required Plaintiff to complete a mental health evaluation with her employer's doctor(s) before she would be allowed to return to work but did not require the same of any other employee that was on leave for a death in the family.

38.    As a result of the disparate treatment, Plaintiff lost her baby and sustained irreparable damage.

B.  COUNT 2: HOSTILE WORK ENVIRONMENT

39.    Plaintiff was subjected to a hostile work environment created by supervisor Espino's differential and discriminatory treatment based on gender and pregnancy.

40.    Espino was needlessly hostile, cruel, and refused to work with Plaintiff for the sake of her health and her baby's health.

41.    This intimidating treatment based on gender created an atmosphere of hostility and inequality in the workplace for Plaintiff, adversely affecting Plaintiff's emotional well-being, ultimately leading to the death of Plaintiff's child.

C.  COUNT 3: RETALIATION

42.    Plaintiff faced retaliation due to being terminated by Parkland due to her complaints related to the gender and pregnancy discrimination.

43.    Following her complaints of a hostile work environment, Plaintiff experienced increased hostile treatment, including a sudden increase in her workload with more challenging assignments, a negative performance review, and a formal write-up.

Despite voicing her concerns to higher management, no corrective action was taken to address the issues.

44.    Additionally, after taking leave because of her pregnancy, Defendant required Plaintiff to undergo a mental health evaluation as a condition of her return to work. This evaluation resulted in restrictions on her ability to work under her supervisor, Espino, due to the emotional distress caused by her work environment. Instead of reassigning her or offering support, Parkland instructed Plaintiff to find a new position within the organization, then terminated her employment after she applied for several internal positions without success.

45.    Plaintiff's termination occurred without prior notice and while her EEOC charge of discrimination was pending.

## II.    COUNT 2: PREGNANCY DISCRIMINATION & RETALIATION UNDER THE PREGNANCY DISCRIMINATION ACT

46.    Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein.

47.    Plaintiff's request(s) for leave and/or accommodation, as a pregnant woman, were treated differently that her non-pregnant coworkers. Specifically, she was not allowed to work from home when others were allowed to, which went against her doctor's orders.

48.    In response to Plaintiff's complaints about her supervisor, Espino, Plaintiff experienced a series of adverse actions, including an increased and more difficult workload, a negative performance review, and a write-up.

49.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff experienced significant emotional distress and ultimately lost her child.

50.     Moreover, after the loss of her baby and her complaints about Espino's unfavorable treatment, Plaintiff was required by the company to complete a mental health exam, by a fellow employee of the company, when no other colleague of Plaintiff was subjected to such an invasive examination before returning to work.

51.     Espino did not provide any alternative accommodations and did not allow Plaintiff to take leave, Plaintiff was forced to use PTO to no avail.

52.     Plaintiff was ultimately terminated without notice by Parkland due to her complaints related to the pregnancy discrimination and while her charge of discrimination with the EEOC was still pending.

**III.    COUNT 3: FAILURE TO ACCOMMODATE & RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990**

53.     Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein.

54.     Plaintiff is an individual that, during her pregnancy, had a qualified disability under the Americans with Disabilities Act of 1990. Specifically, Plaintiff suffered from hypertension disorder due to pregnancy, which was further complicated by fetal growth restriction. These conditions substantially limited one or more major life activities, including the ability to stand, sit, walk, and move about in an office setting.

55.     Plaintiff's doctor recommended Plaintiff seek accommodation for Plaintiff to work from home due to these diagnoses.

56.    Plaintiff submitted this request for accommodation to Defendant, but not only was the request denied for no legitimate reason, but Plaintiff was not provided with any alternative accommodations that would comply with Plaintiff's doctor's recommendation but still allow Plaintiff to work for the company.

57.    Further, when Plaintiff complained about Espino's denial of her request, among other things, she was mandated to undergo a mental health evaluation by a Parkland employee or else she would not be able to continue working for the company.

## IV.    COUNT 4: DISCRIMINATION & RETALIATION UNDER TEXAS LAW

58.    Plaintiff adopts by reference all of the facts set forth above. *See*, TEX. R. CIV. P. 58.

59.    Plaintiff is a member of one or more protected classes under Chapter 21, Sec. 21.051 of the Texas Labor Code ("TCHRA"). An employer commits unlawful practices under the statute if, because of an employee being a part of a protected class, they (1) discharge an employee or discriminate against an employee in any manner in connection with pay or any terms, conditions or privileges of the individual's employment; or (2) limit, segregates, or classify an employee or applicant for employment in a manner that deprives the employee of any employment opportunities or adversely affect the status of the employee in any way. *See*, Chapter 21, Sec. 21.051 of the Texas Labor Code. Here, Plaintiff was discriminated due to her pregnancy and gender and her pregnancy-related diagnosis.

60.    Specifically, Plaintiff, a female employee, was subjected to differential (and discriminating) treatment compared to her male or non-pregnant colleagues. Despite reporting instances of this differential treatment by Defendant no corrective actions were

taken. In fact, Plaintiff experienced adverse employment actions, including an increased workload, assignment to more challenging tasks, a negative performance review, and a write-up.

61.    When Plaintiff took maternity leave, Parkland further retaliated by requiring her to undergo a mental health evaluation before returning to work, then using the evaluation's findings to restrict her from working under her former supervisor. Instead of offering a reassignment, Parkland forced Plaintiff to apply for new positions within the organization.

62.    Despite her compliance, Parkland failed to place her in a new role and terminated her employment without prior notice. This termination occurred while her discrimination charge was pending with the EEOC.

63.    This treatment constitutes unlawful discrimination under TCHRA, as it adversely affected the terms and conditions of Plaintiff's employment and led to significant harm, including the tragic loss of Plaintiff's child.

64.    Therefore, Parkland's conduct is in violation of multiple sections of Chapter 21 of the Texas Labor Code. *See* TEX. LAB. CODE §§ 21.051(1), 21.105.

## VI.    DAMAGES

65.    Due to the discrimination and retaliation based on pregnancy and gender suffered at the hands of Defendants, Plaintiff has suffered actual damages.

66.    In addition, Plaintiff avers that Defendants' unlawful discrimination and retaliation justifies an award of compensatory and/or punitive damages.

67.      Such discrimination has caused Plaintiff to suffer damages of severe emotional distress and lost wages including lost raises, seniority and retirement benefits, and other benefits associated as Plaintiff has been subjected to an adverse employment action as a result of the discrimination.

68.      Plaintiff has been denied opportunities to which she was entitled and such benefits and privileges that she would have received if she had not been intentionally discriminated against by Defendant. Plaintiff is now suffering and will continue to suffer past and future pecuniary losses, emotional and physical pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. These irreparable injuries and monetary damages are the results of Defendant's discriminatory practices and retaliation, and they will continue unless and until this Court grants relief.

## VII.   JURY REQUEST

69.      Plaintiff requests a trial by jury.

## VIII.  PRAYER

For these reasons, Plaintiff prays that Defendant be cited to appear and answer herein and that this case be advanced for trial before a jury, and that on final hearing this Court grant the following relief:

a)  For actual economic damages including, but not limited to, back pay to compensate Plaintiff for loss of income and/or employment-related benefits resulting from the discriminatory actions of Defendant;

- 14 -

b)  Compensatory damages for severe mental anguish in the past and future, injury to her reputation, for adverse effects on her career, and for diminished earning capacity resulting from the discriminatory actions of Defendant;

c)  For exemplary and/or punitive damages in the amount found by the trier of fact to punish and deter continuation of Defendant's unlawful employment practices;

d)  An award of reasonable attorneys' fees and the cost and expenses related to the litigation of this claim;

e)  Pre-judgment interest at the highest rate allowed by law;

f)  Post-judgment interest at the highest rate allowed by law; and

g)  For such other and further relief to which this Court deems Plaintiff is justly entitled and/or deems proper.

Respectfully Submitted,

**SPACE CITY LAW FIRM**

Bridget Davidson
*bdavidson@spacecitylaw.com*
TBN: 24096858
SPACE CITY LAW FIRM
440 Louisiana Street, Suite 1110
Houston, Texas 77002
Tel.: 713-568-5305
Fax: 713-583-1107

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this First Amended Complaint was served on all parties of record through the Court's CM/ECF system on November 15, 2024.

Bridget Davidson