IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **GIOVONNI SHELTON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:24-CV-2190-L-BW** |
| | § | |
| **PARKLAND HEALTH,** | § | |
| | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On February 18, 2025, the Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 22) was entered, recommending that the court deny Defendant Parkland Health's ("Defendant" or "Parkland") Motion for Partial Dismissal of Plaintiff's First Amended Complaint ("Motion" or "Motion for Partial Dismissal) (Doc. 11) pursuant to Federal Rule of Civil Procedure 12(b)(6). Parkland filed Objections ("Objections") (Doc. 23) to the Report on March 3, 2025. For the reasons herein explained, the court **accepts** the Report (Doc. 22) **as modified and supplemented** by this Memorandum Opinion and Order; **overrules** Defendant's Objections (Doc. 23); and **denies** Defendant's Motion for Partial Dismissal (Doc. 11). The court also **denies as moot** the prior Motion for Partial Dismissal (Doc. 5) filed by Defendant, which was mooted when Plaintiff subsequently filed her First Amended Complaint ("Amended Complaint").

## I.    Background

Giovonni Shelton ("Plaintiff" or "Ms. Shelton") filed this lawsuit against Parkland on August 26, 2024. On October 25, 2024, Parkland moved to dismiss certain claims in Plaintiff's Complaint pursuant to Rule 12(b)(6). *See* Doc. 5. As indicated, this motion was mooted when Plaintiff amended her pleadings as a matter of course on November 15, 2024, within the time

permitted by Federal Rule of Civil Procedure 15. *See* Doc. 10. The magistrate judge apparently recognized as much because his Report only addresses Parkland's subsequent Motion for Partial Dismissal, which focuses solely on the claims and allegations in Plaintiff's Amended Complaint. To avoid confusion, the court **denies as moot** Defendant's prior Motion for Partial dismissal (Doc. 5) and devotes the remainder of this Memorandum Opinion and Order to Defendant's Motion for Partial Dismissal (Doc. 11) and request to dismiss Plaintiff's claims as alleged in her Amended Complaint.

In her Amended Complaint (Doc. 10), Ms. Shelton alleges that she began working for Parkland as a Senior Payroll Analyst in March 2023. She asserts claims against Parkland under: (1) Title VII of the Civil Rights Act of 1964 ("Title VII") for hostile work environment, retaliation, and gender (pregnancy) discrimination based on disparate treatment,; (2) the Pregnancy Discrimination Act ("PDA") for pregnancy discrimination and retaliation; (3) the Americans with Disabilities Act ("ADA") for failure to accommodate and retaliation; and (4) the Texas Commission on Human Rights Act ("TCHRA") for gender/pregnancy discrimination and retaliation.

These claims stem from Parkland's alleged treatment of Ms. Shelton after she notified her direct supervisor Ms. Christi Espino ("Ms. Espino") that she was pregnant, and she requested to work from home for three to four weeks, in accordance with her doctor's recommendation, after she was diagnosed with a pregnancy-related hypertension disorder that caused her blood pressure to rise and was further complicated by fetal growth restrictions. Plaintiff alleges that this request for accommodation was granted by Parkland's third-party Administrator Sedgwick; however, Ms. Espino overruled the Administrator and denied the accommodation. In addition, Plaintiff alleges that, after making the request for accommodation, Ms. Espino changed and significantly increased

her workload and "issued her a write-up" in her 90-day performance review for failure to meet expectations.

Plaintiff alleges that she expressed concerns about these actions to Parkland's vice president, but no corrective action was taken at that time. According to Plaintiff, Parkland began an investigation of her complaints while she was on leave in October 2023, but no action resulted from the investigation. In addition, she alleges that, during this leave of absence, she gave birth to a still born child, and she attributes losing her child to the stress of her supervisor's denials of her request for accommodation and what she refers to as a hostile work environment. Ms. Shelton alleges that, while on leave, Parkland also retaliated against her by requiring her to undergo a mental health evaluation as a condition of her returning to work, which condition to her knowledge had never been previously imposed upon any male employees who had grieved the loss of a child. Ms. Shelton alleges that she detailed these concerns in a letter to Parkland's human resources department while on leave.

According to Ms. Shelton's pleadings, she ultimately agreed to undergo an evaluation, and the doctor who evaluated her diagnosed her with post-traumatic stress disorder and attributed the condition to her work environment under Ms. Espino. As a result, her return-to-work documentation included the restriction that she could no longer work under Ms. Espino. Ms. Shelton further alleges that, upon returning to work, she was advised that she would need to secure a different position within Parkland, but Parkland refused to reassign her to a different position and instead required her to apply for open positions. Ms. Shelton alleges that she applied for several positions to no avail, and, after thirty days, Parkland removed her from its system without notice. Then, in March 2024, Parkland allegedly sent Plaintiff a letter confirming that her employment had been terminated. Plaintiff alleges that before being fired, she filed her initial complaint or

Charge of Discrimination No. 450-2024-02629 with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the last discriminatory act alleged. She alleges in her Amended Complaint that her termination and prior actions by Parkland and her supervisor constituted retaliation. Ms. Shelton acknowledges that she did not file another complaint or Charge of Discrimination after her employment was terminated to include a retaliation claim based on her termination.

Defendant asserts in its Motion and supporting brief that is seeking dismissal under Rule 12(b)(6) of Plaintiff's retaliation claims under Title VII, the PDA, the TCHRA, and the ADA; and her failure to accommodate claim under the ADA on the ground that she did not include these claims in her dual-filed Charge of Discrimination with the EEOC and the Texas Workforce Commission Civil Rights Division, which it refers to collectively as "the Charge."[1] Defendant's brief, however, also extends to Plaintiff's discrimination claim. *See* Doc. 12 at 4 (referring to "disability discrimination"). Parkland asserts that these claims should be dismissed because Ms. Shelton failed to exhaust her administrative remedies. Parkland further asserts that, in ruling on its Motion for Partial Dismissal and determining whether Plaintiff exhausted her administrative remedies, the court can and should consider the Charge.

According to Parkland, the Charge filed by Plaintiff on December 19, 2023, demonstrates that Plaintiff failed to exhaust certain claims in her Amended Complaint, and it is entitled to dismissal of these claims because:

> [i]n the Charge, including in the narrative portion, Shelton did not allege that (1) Parkland retaliated against her by subjecting her to a hostile work environment, (2) Parkland retaliated against her by terminating her employment, (3) Parkland engaged in disability discrimination, (4) she has a disability, or (5)

---

[1] Specifically, Parkland alleges that it "moves to dismiss Plaintiff's claims for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pregnancy Discrimination Act ("PDA"), and the Texas Commission on Human Rights Act ("TCHRA") and for failure to accommodate and retaliation under the Americans with Disabilities Act of 1990 ("ADA")." Doc. 11 at 1; Doc. 12 at 1.

Parkland violated the ADA in any way. *See* Exhibit 1. (APP. 001-004) Yet in her First Amended Complaint, Shelton alleges that Parkland retaliated against her by subjecting her to "a sudden increase in her workload with more challenging assignments, a negative performance review, and a formal write-up," in violation of Title VII, the PDA, and the TCHRA. *See* Doc. 10, First Amended Complaint ¶¶ 43, 48, 60. Shelton also alleges retaliatory termination under Title VII, the PDA, and the TCHRA, as well as failure to accommodate and retaliation under the ADA. *Id*. at ¶¶ 44, 52-57, 60-62 Because Shelton failed to exhaust administrative remedies with respect to these claims, she fails to state claims upon which relief may be granted, and the Court should dismiss these claims.

Doc. 12 at 4 (citations to cases omitted).

Ms. Shelton takes issue with Defendant's request to consider the Charge submitted in support of its Motion for Partial Dismissal. She acknowledges that, under Rule 12(b)(6), courts may consider matters outside the pleadings if the document is referred to in a plaintiff's complaint and central to a plaintiff's claim. She also acknowledges that the Charge is referenced in her Amended Complaint, but she contends that Defendant's Motion for Partial Dismissal is actually a motion for summary judgment under Federal Rule of Civil Procedure 56 because the Motion attaches and requests the court to consider her original Charge. She, therefore, appears to dispute whether the Charge is central to the claims for which Parkland seeks dismissal on exhaustion grounds. Ms. Shelton does not dispute the accuracy of the information in the Charge. She instead asserts that, if the court intends to consider matters outside the pleadings—namely, her originally filed Charge—in ruling on Defendant's Motion, it should also consider the documents attached to her response out of fairness, presumably for context purposes.

Plaintiff nevertheless argues that the factual allegations in the Charge were sufficient to put Parkland on notice regarding the nature of her pre-Charge claims, especially when viewed in light of the termination letter she received. Additionally, to the extent Defendant seeks dismissal of her post-Charge retaliation claim pertaining to Parkland's termination of her employment after she filed the Charge, Ms. Shelton contends that the exception to exhaustion in *Gupta v. East Texas*

*State University*, 654 F.2d 411, 414 (5th Cir. 1981), applies and relieved her from any exhaustion requirement as to this retaliation claim.

In its reply, Parkland does not address Plaintiff's argument regarding the applicability of the *Gupta* exception to her claims for post-Charge retaliation. Instead, it continues to argue that the Charge is insufficient to exhaust her retaliatory hostile work environment claims. Parkland also continues to contend that Ms. Shelton's failure to check the "Disability" box on the Charge form precludes her from pursuing an ADA claim because her factual allegations regarding a "hypertension disorder of pregnancy" were not enough to put it or any investigator on notice of a disability discrimination claim.

Finally, Parkland disagrees with Plaintiff's contention that consideration of the Charge in this case requires the court to convert its Motion for Partial Dismissal under Rule 12(b)(6) to one for summary judgment under Rule 56. In this regard, Defendant maintains its position that the court can and should consider the Charge in ruling on its Motion under Rule 12(b)(6) because, in its view, the Charge is referenced in Plaintiff's Amended Complaint and central to her claims. Defendant's Motion became ripe when it filed its reply on December 30, 2024. Thereafter, the magistrate judge issued his Report on February 18, 2025.

## II.    Report and Recommendation Regarding Defendant's Motion

In his Report, the magistrate judge first explains that a party relying on an affirmative defense such as failure to exhaust administrative remedies is not entitled to dismissal of a plaintiff's claims under Rule 12(b)(6), unless a plaintiff has pleaded himself or herself out of court by admitting to all of the elements of the affirmative defense. The magistrate judge then goes on to conclude that it would not be appropriate for the court to consider the Charge in ruling on

Parkland's Motion pursuant to Rule 12(b)(6) and request for dismissal of certain claims based on its affirmative defense of failure to exhaust administrative remedies.

In this regard, the magistrate judge reasons as follows:

> To obtain dismissal based on its affirmative defense, Parkland must show that Shelton admits all the elements required to prove its defense. As noted, Shelton alleges that she has exhausted all administrative remedies, and she certainly does not admit facts that establish a failure to exhaust claims for retaliation and disability discrimination. Parkland's motion, rather, is predicated on its introduction and use of Shelton's EEOC charge, urging the Court to consider the charge because it is referenced in Shelton's complaint. (Br. at 4.) But Parkland overreads instructive authority in believing the Court can consider a document outside of the complaint so long as it mentioned in the complaint.

> At the Rule 12(b)(6) stage, the Court may consider documents attached to a defendant's motion to dismiss when those documents are "referred to in the complaint and are central to the plaintiff's claims." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). By attaching these documents, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* (quoting *Collins [v. v. Morgan Stanley Dean Witter*,] 224 F.3d [496, 499 (5th Cir. 2000)]. "But documents used to support a defendant's affirmative defense appear not to fall within" the rule permitting a court to consider documents outside the complaint. *Skipper v. FedEx*, No. 3:23-CV-212-E-BN, 2023 WL 9065085, at *4 (N.D. Tex. Dec. 8, 2023) (internal quotation marks omitted), *accepted*, 2024 WL 41555 (N.D. Tex. Jan. 3, 2024); *see also Anderson v. Octapharma Plasma, Inc.*, No. 3:19-CV-2311-D, 2020 WL 7245075, at *7 (N.D. Tex. Dec. 9, 2020) (declining to consider consent forms that were not "central" to negligence claims "because they are not necessary to establish any of the essential elements of the claim") (internal quotation marks omitted)). The EEOC charge is not essential to Shelton's claims, as it is not necessary to establish any element that she must prove. Rather, Parkland relies on the charge here "solely as a defense" to her claims. *See Anderson*, 2020 WL 7245075, at *7. Accordingly, the charge should not be considered to assess whether Shelton has stated a claim for which relief may be granted. *See id.*

Doc. 22 at 6-7. In addition, the magistrate judge notes as follows:

> Parkland's argument for considering the charge cites a Fifth Circuit case that illustrates the general principle that courts may consider outside evidence referenced and essential to plaintiffs' claims, but that case does not address defendants' use of outside evidence to establish an affirmative defense. (Br. at 4.) Parkland also cites a district court opinion using outside material as Parkland requests, but the undersigned declines to follow it for several reasons, including that the opinion does not address the principle raised and applied here.

Doc. 22 at 7 n.1.   The latter reference to a district court opinion appears to refer to Defendant's citation to and reliance on *Issa v. Boeing Comm. Aircrafts Co.*, No. SA-23-CV-01029, 2024 WL 3153388 (W.D. Tex. May 20, 2024).  *See* Doc. 12 at 3.

Applying this reasoning to Ms. Shelton's pleadings, the magistrate determined that she "has not pleaded herself out of court by admitting that she failed to exhaust claims for retaliation and disability discrimination."  *Id.* at 7.  The magistrate judge, therefore, recommends that the court not consider the Charge and deny Defendant's Motion for Partial Dismissal under Rule 12(b)(6).  For various reasons, including Plaintiff's failure to follow applicable Local Civil Rules and the absence of a request by Defendant to covert its Motion to one for summary judgment, the magistrate judge also declined to consider the documents attached to Ms. Shelton's response or convert Defendant's request for dismissal under Rule 12(b)(6) to one for summary judgment under Rule 56.

## III.   Discussion

As noted, Parkland objected to the magistrate judge's Report.  In its Objections, Parkland first asserts that it is clearly appropriate for courts to take judicial notice of matters of public record, including a charge of discrimination in ruling on a Rule 12(b)(6) motion to dismiss for failure to exhaust administrative remedies.  Parkland, therefore, asserts that the court should take judicial notice of Ms. Shelton's Charge and grant its Motion on this basis.   In addition, Parkland reasserts its argument that the Charge referenced in Ms. Shelton's pleadings and attached to its Motion is central to the claims asserted by Ms. Shelton and should be considered in ruling on and granting its Motion for Partial dismissal based on its exhaustion defense.

### A.    Whether Judicial Notice of the Charge is Appropriate

Parkland correctly notes that a district court, in ruling on objections to a magistrate judge's findings, conclusions, and recommendations, may accept, reject, or modify in whole or in part such findings and conclusions, and a district also has authority to receive and consider further evidence or recommit the matter to the magistrate judge with instructions. Doc. 23 (citing 28 U.S.C. § 636(b); and Fed. R. Civ. P. 72(b)(3)). Legal arguments raised for the first time in objections to a magistrate judge's report, however, are waived and not properly before the court. *Freeman v. City of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) ("[A] party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge.")).  Parkland's judicial notice argument is a legal argument.  As Parkland did not previously argue in its Motion, brief, or reply that the court could or should take judicial notice of the Charge in ruling on its Motion and exhaustion defense, it **waived** this legal argument by not presenting it in the first instance to the magistrate judge for consideration, and the undersigned declines to consider it.

### B.    Whether the Charge is Central to Plaintiff's Claims

Parkland next cites a handful of district cases out of the Western and Northern Districts of Texas to support its objection and argument that district courts in the Fifth Circuit have found charges of discrimination to be central to a plaintiff's claims for purposes of ruling on a Rule 12(b)(6) motion based on administrative exhaustion. Doc. 23 at 3-4 (citing *Heerwagen v. Enlink Midstream, LLC*, No. 3:19-CV-01187-E, 2020 WL 836873, at *3 n.4 (N.D. Tex. Feb. 20, 2020); *Winn v. Cleburne ISD*, No. 3:18-CV-02949-E, 2020 WL 5291941, at *4 n.2 (N.D. Tex. Sept. 3, 2020); *Millan v. Bexar Cnty., Tex.*, No. SA-21-CV-0659, 2022 WL 62541, at *4 (W.D. Tex. Jan. 5, 2022); *Issa*, 2024 WL 3153388 at *4-5; and *West v. R&K Enter., Solutions*, No. 3:23-CV-1371-

G-BN, 2024 WL 3891533, at *5 (N.D. Tex. July 19, 2024), *accepted*, 2024 WL 3891838 (N.D. Tex. Aug. 21, 2024).

In ruling on a Rule 12(b)(6) motion, all well-pleaded facts are assumed true and must be viewed in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court's review is limited to the plaintiff's pleadings, which consist of the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the plaintiff's claim and referenced in the complaint. *Collins*, 224 F.3d at 498-99.

Here, Ms. Shelton's Amended Complaint specifically references by name and number the Charge she filed with the EEOC, and Parkland attached a copy of the Charge to its Motion for Partial Dismissal to support its exhaustion argument. Thus, the only remaining issue is whether the Charge is central to the claims for which Parkland seeks dismissal. Each of the cases relied on by Parkland involved a Rule 12(b)(6) motion, an EEOC charge of discrimination, and an exhaustion defense, and all of the cases reference the general rule regarding consideration of documents attached to a motion to dismiss that are central to the plaintiff's claim and referenced in the complaint. Other than citing the general rule, however, none of the cases explains why an EEOC charge is central to the plaintiff's claim or claims. Instead, the courts in each case, except for *Issa*, simply conclude without elaborating that the charge is central to the plaintiff's claim. The court in *Issa* correctly sets forth the general rule and goes on to consider the charge, but it never states whether it is central to the plaintiff's claim or claims in that case. In any event, these unpublished district court cases are not binding on the undersigned.

As the magistrate judge in *West v. R&K Enterprise, Solutions* recognized, the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims. 2024

WL 3891533, at *4 (quoting *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)).  In *Kaye*, the district court concluded that, despite the lack of a test, cases previously decided by the Fifth Circuit provide some guidance and suggest that:

> documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 499. For instance, in *Collins v. Morgan Stanley Dean Witter*, in which the Fifth Circuit first approved of the exception, the court held that the district court properly considered a contract and an investment bank's fairness opinion of a potential merger between two companies in order to determine whether the plaintiff stock-option holders were third-party beneficiaries of the contract. 224 F.3d at 499; *see Collins v. Morgan Stanley Dean Witter*, 60 F. Supp. 2d 614 (S.D. Tex. 1999). Likewise, in *In re Katrina Canal Breaches Litigation*, the court upheld the district court's consideration of the insurance contracts that formed the basis of the plaintiffs' claims. 495 F.3d at 205.
>
> However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint. *See Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536-37 (5th Cir. 2003). In *Scanlan v. Texas A & M University*, the Fifth Circuit reversed the district court's decision to incorporate documents into the complaint. *Id.* at 537. There, the district court relied on a special commission's report in dismissing claims arising out of the injury and death of several students during the Texas A & M University bonfire disaster. *Id.* The Fifth Circuit held that "the report alone [was] not central to [the plaintiffs'] claims . . . [because] [t]he plaintiffs rel[ied] on substantial, other evidence to support their claims." *Id.* at 537.

*Kaye*, 453 B.R. at 662.

Based on this reasoning, the court in *Kaye* concluded that the report relied on by the trustee was not central to the plaintiff's claims:

> [T]he William Blair Report is not central to the Trustee's claims because it is not necessary to establish an element of any of his claims but is merely one piece of evidence that [] he relies on to support his allegations. Unlike a breach of contract case, in which the contract is itself a fact that the plaintiff must prove, the Trustee could conceivably prove Bruno's insolvency at trial without ever mentioning the William Blair Report. That the Amended Complaint relies heavily on the Report does not change this fact. The Report may be the only source of information available to the Trustee at this stage of the proceedings, but that does not make the

Report necessary for demonstrating insolvency. For the same reasons, the affidavits are not central to the Trustee's claims, but only evidence cited in the complaint.

*Kaye*, 453 B.R. at 662-63.

The same or similar reasoning applies here. Ms. Shelton references the Charge in her Amended Complaint, but she contends that the court should also consider other evidence in resolving the exhaustion issue raised by Parkland. *See Scanlan*, 343 F.3d at 537 & n.1 (concluding that "the report alone is not central to [the plaintiffs'] claims . . . [because] [they] rely on substantial, other evidence to support their claims" and noting that, "[a]lthough the [] plaintiffs . . . did not specifically object to [application of] the *Collins* exception, [they] presented substantial summary judgment evidence that placed the district court on notice that they were relying on much more than the Final Report.").

Moreover, the court agrees with the magistrate judge that the Charge appears to be more central to Parkland's exhaustion defense than Ms. Shelton's claims. *See id.* at 537 ("Although the plaintiffs rely on the Final Report in their complaints, . . . it is much more central to the University Officials' defenses."). While affirmative defenses such as failure to exhaust may be asserted on a 12(b)(6) motion, dismissal on that basis is generally appropriate only when the defense is evident on the face of the complaint. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, 467 F.3d 466, 470 (5th Cir. 2006). Title VII requires administrative exhaustion, and Title VII plaintiffs are required to exhaust their administrative remedies by filing a charge of discrimination with the EEOC before filing suit in federal court. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). Failure to exhaust administrative remedies, however, is an affirmative defense that must be pleaded and proved by the defendant. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307-08 (5th Cir. 2018) (citations omitted).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court extended this reasoning to claims subject to the Prison Litigation Reform Act ("PLRA"), concluding that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216. Based on the reasoning in *Jones*, the Fifth Circuit has held that, under the Employee Retirement Income Security Act, exhaustion is an affirmative defense that need not be pled in the plaintiff's complaint. *Wilson v. Kimberly–Clark Corp.*, 254 F. App'x 280, 286-87 (5th Cir. 2007) (per curiam). Other courts have concluded that the reasoning in *Jones* applies in the Title VII context. *See, e.g.*, *DiPetto v. United States Postal Serv.*, 383 F. App'x 102, 104 (2d Cir. 2010); *Howard v. Gutierrez*, 571 F. Supp. 2d 145, 152 (D.D.C. 2008); *Williams v. Doyle*, 494 F. Supp. 2d 1019, 1029 (W.D. Wis. 2007). Although the Fifth Circuit in *Davis v. Fort Bend County* did not reference *Jones*, it has similarly concluded that failure to exhaust administrative remedies under Title VII and the ADA is an affirmative defense that must be pleaded and proved by the defendant. *Davis*, 893 F.3d at 307-08 (Title VII); *Luebano v. Office Depot, L.L.C.*, 2023 WL 4249268, at *3 (5th Cir. 2023) (citing *Davis*, 893 F.3d at 307, for the conclusion that failure to exhaust administrative remedies is an affirmative defense that the defendant must raise and reversing dismissal of ADA claim)). As the PDA is simply an expansion and extension of Title VII, the court concludes that failure to exhaust is also an affirmative defense that the defendant rather than the plaintiff must plead and prove. It is for this reason that the Charge appears much more central to Parkland's exhaustion defense than any of Plaintiff's claims for which exhaustion is required because exhaustion is not an element of any of Plaintiff's claims, and Plaintiff is not required to plead facts supporting exhaustion.

In researching the issue, though, the court did locate two cases in which the Fifth Circuit concluded that an EEOC complaint or charge and right-to-sue letter were central to the plaintiff's

claim(s) in ruling on Rule 12(b)(6) motions based on administrative exhaustion grounds. In *Lopez v. Kendall*, the court concluded that the plaintiff's EEOC complaint was "certainly central to [the plaintiff's] civil complaint, as [the] alleged discrimination is the subject of both the EEO[C] complaint and this action." 2023 WL 2423473, at *2 n.1 (5th Cir. Mar. 9, 2023) (per curiam). The Fifth Circuit, nevertheless, reversed and remanded the case because the district court relied on the EEOC complaint and an EEOC counselor's report that were not attached to or specifically referenced in the plaintiff's complaint, and, even assuming that it was appropriate for the district court to consider the EEOC complaint, the issue of whether the charge or complaint was timely filed could not be determined from the EEOC complaint alone. *Id.* at *2.

In *Hamilton v. Promise Healthcare*, the Fifth Circuit determined, without elaborating, that an EEOC right-to-sue letter was central to the plaintiff's discrimination claim. 2023 WL 6635076, at *3 (5th Cir. Oct. 12, 2023). The district court's opinion granting the Rule 12(b)(6) motion on exhaustion grounds, however, was vacated and the case was remanded for further proceedings because it was not clear as a matter of law that the defendant had met its burden of proving that the plaintiff failed to exhaust her administrative remedies prior to filing suit. *See id.* at *4 ("While the EEOC documents submitted by Promise Healthcare do not prove that Hamilton submitted a verified intake questionnaire or affidavit, these records also do not disprove Hamilton's allegation in her complaint that she filed a charge of discrimination.").

Lopez and Hamilton seem to suggest that the Fifth Circuit might agree with Parkland that the Charge in this case is central to the plaintiff's claims even though Parkland relies on the Charge to support its affirmative defense of failure to exhaust administrative remedies. As the opinions in these case are unpublished and do not appear to align with the reasoning in the prior Fifth Circuit cases herein discussed, the court determines for the reasons explained that the Charge is central to

Parkland's exhaustion defense, but not to Plaintiff's claims or any element of Plaintiff's claims for which she has the burden of pleading and proving. Additionally, as indicated, although Ms. Shelton does not dispute the accuracy of the information in the Charge, she does contend that the court should consider additional documents in ruling on the exhaustion issue, which further supports the court's determination that consideration of the Charge in ruling on Defendant's Rule 12(b)(6) Motion would not be appropriate. Even assuming for the sake of argument that the court can consider the Charge without converting Defendant's Motion to one for summary judgment, which as noted Defendant opposes, it determines that the information in the Charge, particularly when viewed in the light most favorable to Plaintiff and resolving all doubts in her favor, is sufficient at this stage to establish that Plaintiff adequately exhausted her administrative remedies for the claims at issue.

The purpose of requiring employees to exhaust their administrative remedies by filing a charge with the EEOC before seeking relief in court is to enable the EEOC to investigate and facilitate, when appropriate, a resolution with the plaintiff's employer. In determining whether the claims asserted by a plaintiff in civil litigation were exhausted before filing suit, courts construe the plaintiff's EEOC charge or complaint:

> broadly but in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." [Courts] use a "fact-intensive analysis" of the administrative charge that looks beyond the four corners of the document to its substance. In sum, a Title VII lawsuit may include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission."

*McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (internal citations omitted).

Proceeding in this manner helps to reconcile "the competing policies [that] underlie judicial interpretation of the exhaustion requirement." *Id.* These policies include, on the one hand, the requirement that "the scope of an EEOC charge should be liberally construed for litigation

purposes because Title VII 'was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship.'" *Id.* (citation omitted). "On the other hand, the 'primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims.'" *Id.* (citation omitted). Administrative exhaustion is not a technicality or procedural "gotcha" issue, but rather a process that affords defendants fair notice of potential claims. *Id.* at 272.

Title VII claims "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). Such claims are "limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Id.* Because a plaintiff must exhaust remedies in the same manner for ADA, PDA, and Title VII claims,[2] the court determines that the reasoning in *Fine* applies with equal force to claims under the ADA and PDA.[3]

In Ms. Shelton's Charge in the section "Discrimination Based On," she checked the boxes for "Sex," "Retaliation," and "Pregnancy Discrimination Act of 1978." Doc. 13. With respect to "The Particulars," she alleged as follows:

> I began working at Parkland Health as a Senior Payroll Analyst on March 21, 2023. When I became pregnant, I let my supervisor and coworkers know by over a Webex meeting. I went to a scheduled prenatal appointment at Parkland Health on October 6, 2023. At this appointment, I was diagnosed with hypertension disorder of pregnancy which was further complicated by fetal growth restriction. My doctor requested an accommodation for me to work from home for the next three to four weeks so that I would have an increased ability to rest which would

---

[2] *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (holding that a plaintiff must exhaust remedies in the same manner for ADA and Title VII claims).

[3] As the PDA "amended Title VII by explicitly including discrimination based on pregnancy and related medical conditions within the definition of sex discrimination," *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir. 2002), and PDA discrimination claims are analyzed similarly to those under Title VII, *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016), the court concludes that a plaintiff asserting a PDA claim must exhaust remedies in the same manner for claims under Title VII.

help decrease my blood pressure. I submitted this accommodation request to Sedgwick as required by Parkland Health on October 9, 2023.

However, on the same day, October 9, 2023, my supervisor, Christi Espino, denied my work from home accommodation because my job was not a "virtual role." Additionally, Espino insisted that my job had no "limiting or strenuous aspects," and my request for accommodation would not be approved "without just cause." Espino provided no other options for any other accommodation that would be acceptable to Parkland Health but also followed my doctor's orders. Notably, though Espino denied my request to work from home, she had allowed other employees [to] do so for reasons such as "family issues." This was one of the main reasons I thought Espino had a bias against me as she treated me differently (and worse) than my coworkers. Moreover, this is one of the main reasons why I decided to report a hostile work environment due to Espino's refusal to accommodate me. As a result, I had to use my Paid Time Off for three days to go to my subsequent prenatal check-up appointment.

Due to the stress of my supervisor's denial of my accommodations, her refusal to grant me time off other than using the Paid Time Off, and having to live in and report a hostile work environment at my job, I ultimately lost my child. Moreover, since I complained about Espino's denial of my reasonable request for accommodation—per my doctor's orders—I have experienced retaliation at Parkland Health. Specifically, Dr. King and Dr. Stephens has since required me to complete a mental health evaluation, with my own employer's doctor(s), or else I will not be able to come back to work. Notably, I have never seen a male who has experienced the death of a child, or any other tragedy, be required to do a mental health evaluation in order to work at Parkland Health. I have been discriminated against due to my pregnancy in violation of the Pregnancy Discrimination Act of 1978, my gender (female) in violations of Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act ("TCHRA") and retaliated against because I complained about the discrimination I have been facing at Parkland Heath.

(Doc. 13) (Ex. 1 at 3.)

Construing the Charge liberally in favor of Plaintiff, the court disagrees with Parkland's contention that Plaintiff did not exhaust her administrative remedies for the discrimination, retaliation, hostile work environment, and failure to accommodate claims under Title VII, the ADA, the PDA, and TCHRA because, according to Parkland, she did not allege in her Charge that: "(1) Parkland retaliated against her by subjecting her to a hostile work environment, (2) Parkland retaliated against her by terminating her employment, (3) Parkland engaged in disability

discrimination, (4) she has a disability, or (5) Parkland violated the ADA in any way." Doc. 12 at

4. The court also disagrees with Parkland's contention that Ms. Shelton's failure to check the box

for disability discrimination or mention the ADA in her Charge suffices to establish its exhaustion

defense.

While Plaintiff did not use the term "disability discrimination" or check the box for

"Disability" on the EEOC form, this alone does not support a finding that she failed to exhaust her

administrative remedies for her ADA claim. *See Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir.

2006) ("[W]e do not require that a Title-VII plaintiff check a certain box or recite a specific

incantation to exhaust his or her administrative remedies"); *Sanchez v. Standard Brands, Inc.*, 431

F.2d 455, 462 (5th Cir. 1970) ("In the context of a statute like Title VII it is inconceivable that a

charging party's rights should be cut off merely because he fails to articulate correctly the legal

conclusion emanating from his factual allegations."). The allegations contained within the EEOC

Charge do not have to exhaustively list every factual detail or possible claim that Plaintiff may

bring against Defendant; they only have to be sufficient to put an investigator on notice of her

claims. *See Manning v. Chevron Chem. Co., L.L.C.*, 332 F.3d 874, 879 (5th Cir. 2003) ("the crucial

element of a charge of discrimination is the factual statement contained therein").

The PDA amended and expanded Title VII's definition of the terms "because of sex" and

"on the basis of sex" to include "because of or on the basis of pregnancy, childbirth, or related

medical conditions'" and to require that "women affected by pregnancy, childbirth, or related

medical conditions shall be treated the same for all employment-related purposes . . . as other

persons not so affected but similar in their ability or inability to work." *Young v. United Parcel

Service, Inc.*, 575 U.S. 206, 226 (2015) (quoting 42 U.S.C. §2000e-(k))). "[P]regnancy alone is

not a disability under the ADA. Instead, the EEOC would look to whether there was a pregnancy-

related impairment that substantially limits a major life activity." *Johnson v. Wag Hotels, Inc.*, No. 3:24-CV-3268-BN, 2025 WL 992573, at *6 (N.D. Tex. Apr. 2, 2025) (quoting *Alexander v. Two Oaks Invs., LLC*, No. 23-CV-00406-SH, 2024 WL 3747166, at *7 (N.D. Okla. Aug. 9, 2024)).

In the Charge, Ms. Shelton alleges that she was discriminated and retaliated against by Parkland and her direct supervisor *after* she disclosed her pregnancy and requested the accommodation recommended by her doctor (to work from home for three to four weeks). Plaintiff not only alleges that her requested accommodation was denied, but she also alleges that she was treated differently than coworkers who were allowed to work from home because of "family issues." Doc. 13. She further alleges that she was treated differently from male coworkers who were not required to undergo a mental health evaluation as a condition to returning to work after experiencing the loss of a child, and that she was retaliated against after she complained about the discrimination she experienced at Parkland. In addition, Ms. Shelton specifically states that the accommodation she requested was made pursuant to her doctor's recommendation to address her pregnancy-related hypertension disorder that caused her blood pressure to rise and was further complicated by fetal growth restrictions. As Parkland cites no case law to show that a medical condition or impairment such as this does not qualify as a disability, the court declines to address this issue in any more detail and concludes that Parkland has failed to meet its burden of establishing its affirmative defense of exhaustion with respect to any disability claim arising out of Ms. Shelton's pregnancy and the related health concerns identified by her doctor.[4]

---

[4] Generally speaking, the analysis in Parkland's Motion as to why it believes Plaintiff's Charge is insufficient to exhaust her administrative remedies with respect to the claims pleaded is not adequately briefed. Parkland argues that the Charge is deficient because it lacks certain factual allegations, but it does not explain why, based on relevant and binding precedent, that the allegations in the Charge are insufficient for exhaustion purposes, and it only dedicates approximately one page of its four-page initial brief to this issue. Parkland goes into slightly more detail in its reply brief and cites a couple of cases that arguably should have been included in its initial brief; however, the unpublished district court cases it relies upon are not binding on the court and, in any event, do not affect the court's determination that the factual allegations in the Charge were sufficient to trigger an EEOC investigation into the alleged discrimination, retaliation, hostile work environment, and failure to accommodate.

Contrary to Parkland's assertion, Ms. Shelton does allege that Parkland and her supervisor retaliated against her and subjected her to a hostile work environment after she notified her supervisor she was pregnant, requested an accommodation, and complained about perceived discrimination. These and Ms. Shelton's other factual allegations were sufficient to trigger the investigatory and conciliatory procedures of the EEOC with respect to the claims that she now asserts in her Amended Complaint under Title VII, the ADA, the PDA, and TCHRA. Moreover, although Ms. Shelton has not expressly asserted a claim under the Pregnant Workers Fairness Act ("PWFA"), which subjects employers to liability for failure to accommodate an employee's known limitations, the factual allegations in her EEOC Charge are sufficient for similar reasons to encompass such a claim despite not specifically referencing the PWFA. [5] *See Sanchez*, 431 F.2d at 462; *Manning*, 332 F.3d at 879; and *Pacheco*, 448 F.3d at 792.

As Parkland's Motion is limited to the issue of whether Plaintiff exhausted her administrative remedies, the court expresses no opinion on whether she has stated any viable claims for relief or whether she has alleged sufficient facts to support the claims in her Amended Complaint. Likewise, it expresses no opinion on whether it would reach a different result if presented with different or additional evidence at the summary judgment stage regarding Parkland's affirmative defense of exhaustion of administrative remedies. Instead, the court simply concludes that, at this stage of the litigation, that it would not be appropriate to consider the Charge

---

[5] The PWFA addresses gaps in existing legislation regarding protections for pregnant workers and adopts an accommodation regime similar to the ADA for pregnant workers, as well as the powers, remedies, and procedures of Title VII as enforcement measures. 42 U.S.C. § 2000gg-1(1). "[T]he term 'known limitation' means physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions that the employee or employee's representative has communicated to the employer whether or not such condition meets the definition of disability specified in . . . the [ADA][.]" 42 U.S.C. § 2000gg(4). The term "[c]ommunicated to the employer, with respect to a known limitation, means an employee or the employee's representative has made the employer aware of the limitation by communicating with a supervisor, a manager, someone who has supervisory authority for the employee or who regularly directs the employee's tasks." 29 C.F.R. § 1636.3(d).

in ruling on Defendant's Motion for Partial Dismissal under Rule 12(b)(6) because it is not central to Plaintiff's claims, and, even assuming that consideration of the Charge is proper without converting Defendant's Motion to one for summary judgment, the factual allegations in the Charge are sufficient to administratively exhaust Plaintiff's administrative remedies with respect to the claims in her Amended Complaint that are the subject of the Motion. Thus, regardless of whether the court considers the Charge, Parkland has not met its burden of establishing its affirmative defense of failure to exhaust administrative remedies, and it is not entitled to dismissal of Plaintiff's claims that are the focus of its Motion. This ruling is not only consistent with the view in this Circuit that Rule 12(b)(6) motions to dismiss are "disfavored in the law and rarely granted,"[6] but also comports with the requirement that, in reviewing exhaustion under the Rule 12(b)(6) standard, the court must accept "all well-pleaded facts as true and view[ ] those facts in the light most favorable to [Ms. Shelton]" while resolving all doubts in her favor. *Hamilton*, 2023 WL 6635076, at *3 (quoting *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018)).

    **C.    Whether Plaintiff was Required to File a Second Charge to Address and Exhaust her Post-Charge Retaliation Claim**

        As noted, although Defendant seeks dismissal of Plaintiff's post-Charge retaliation claim, it did not address the argument in Plaintiff's response that the exhaustion exception in *Gupta v. East Texas State University* applies and relieved her from any exhaustion requirement as to this retaliation claim. Likewise, Defendant did not address the applicability of this exception to Plaintiff's post-Charge retaliation claim in its Objections to the Report even though it continued

---

[6] *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

to argue that the Charge was not sufficient to exhaust any of the claims on which it seeks dismissal based on its exhaustion defense. Defendant, therefore, **waived** this issue.[7]

Even if not waived, the court agrees with Plaintiff that she was not required to exhaust her post-Charge retaliation claim to the extent that this claim is based on Parkland's alleged retaliatory conduct *after* Plaintiff filed her Charge and grows out of her earlier Charge. *Gupta* allows the assertion of retaliation claims that arise from or grow out of an earlier-filed charge. *Gupta*, 654 F.2d at 414 ("[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge[.]"); *but see Sapp v. Potter*, 413 F. App'x 750, 752-53 (5th Cir. 2011) ("Because the *Gupta* exception is premised on avoiding procedural technicalities, it has only been applied to retaliation claims alone [and not] claims in which both retaliation and discrimination are alleged."). Accordingly, Defendant is not entitled to dismissal of Plaintiff's post-Charge retaliation claim based on its affirmative defense of failure to exhaust administrative remedies.

## IV.     Conclusion

Accordingly, having considered Defendant's Motion for Partial Dismissal based on its affirmative defense of failure to exhaust administrative remedies, the parties' briefs, Plaintiff's pleadings, the file, Report, and record in this case, and having conducted a de novo review of the portions of the Report objected to by Defendant, the court **accepts as modified and supplemented** the magistrate judge's Report (Doc. 22), **overrules** Defendant's Objections (Doc. 23), and **denies** Defendant's Motion for Partial Dismissal under Rule 12(b)(6) (Doc. 11). For the reasons explained, the court also **denies as moot** Defendant's earlier Motion to Dismiss (Doc. 5).

---

[7] *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (explaining that inadequately briefed issues are considered waived).

**Memorandum Opinion and Order – Page 22**

**It is so ordered** this 28th day of May, 2025.

Sam A. Lindsay
United States District Judge